UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

TERRY RANSHAW; *aka* CLUB
HOT SHOTS, II, LLC/CACTUS
JUICE SALOON,

    Plaintiff,

v.

CITY OF LANSING, JAMES HUMBLE,
VIRGINIA HUMBLE, JOINTLY AND
SEVERALLY,

    Defendants.

_____/

Case No. 1:09-CV-500

HON. GORDON J. QUIST

## **OPINION**

Plaintiff, Terry Ranshaw, *aka* Club Hot Shots, II, LLC/Cactus Juice Saloon ("Plaintiff"), has filed a three-count complaint against the City of Lansing, James Humble, and Virginia Humble. Count I alleges a violation of 42 U.S.C. § 1983 as to the City. Counts II and III allege gross negligence and tortious interference with a business as to James Humble and Virginia Humble (collectively "the Humbles"). Before the Court are the Humbles' motions to dismiss Plaintiff's claims in Counts II and III under Rule 12(b)(6). The Court has determined that oral argument would not be helpful in deciding the motions. For the reasons set forth below, the Court will grant the motions.

### **Background**

Beginning in 2000, Plaintiff owned and operated a bar know as Club Hot Shots, II, LLC or The Cactus Juice Saloon in Lansing, MI. (Am. Compl. ¶ 1.) In February of 2004, the Humbles

purchased the neighboring property. (*Id.* ¶ 4.) That same year and with the necessary approval from the City, Plaintiff constructed an addition to his existing facility. (*Id.* ¶¶ 5,7.) The newly erected building, which was located within ten feet of the Humbles' home, was a two-story pole barn used to house and exhibit live bulls on the weekends. (Pl.'s Ex. A.)

Through their attorney, the Humbles began contacting the City about its approval of the site plan, arguing that it destroyed the value of their property and constituted a taking without just compensation. (Am. Compl. ¶¶ 8-9.) The Humbles also attended numerous city counsel meetings "for the purposes of complaining about Plaintiff's bar," which, on one occasion, resulted in James Humbles' arrest for "interrupting a public meeting." (*Id.* ¶ 21, 40.) Over the next three years, the Humbles purportedly made at least fourteen (14) complaints to the Lansing Police Department about noise emanating from Plaintiff's bar. (*Id.* ¶¶ 12, 15, 17, 21, 24-26, 28-29, 32, 34, 36.) In response to the complaints, police officers visited Plaintiff's bar on several occasions.[1] (*Id.* ¶12.) However, Plaintiff received only one citation for violating the local noise ordinance, to which he pled guilty and paid a fine. (*Id.* ¶¶ 16, 19.) As a result of the "continuous police presence," Plaintiff alleges that patrons left his bar and were discouraged from returning. (*Id.* ¶¶ 23-24, 26, 28, 64.)

In May of 2007, Plaintiff received a letter from the Lansing City Attorney requesting a meeting to discuss a settlement of the dispute between Plaintiff, the Humbles, and the City. (*Id.* ¶ 38.) Before any such meeting occurred, however, Plaintiff's bar went into foreclosure and he was forced to vacate. (*Id.* ¶¶ 35, 41-42.) Plaintiff subsequently received a letter from the Lansing City

---

[1] In addition to visits resulting from the Humbles' alleged noise complaints, on at least one occasion police officers purportedly entered Plaintiff's bar on their own initiative "to see why the bar was so busy." (*Id.* ¶ 23.) Moreover, Officer Martha Donegal allegedly informed Plaintiff that she and other officers had been told to "watch real careful for noise" at Plaintiff's bar and that "officers were to write any ticket violations for anything they could find at Plaintiff's bar." (*Id*. ¶¶ 24, 32.)

Attorney indicating that "because Plaintiff's bar was now in foreclosure its previous settlement offers were null and void." (*Id.* ¶ 43.)

On March 31, 2009, Plaintiff filed suit in Ingham County Circuit Court naming Craig Humble, Virginia Humble, and the City as defendants. The Complaint alleged negligence, gross negligence, tortious interference with a business, civil conspiracy, civil extortion, and violations of the Fourteenth Amendment Due Process/Fifth Amendment Taking Clause and 42 U.S.C. § 1983. The City filed a Notice of Removal on June 1, 2009. Plaintiff filed an Amended Complaint on August 4, 2009, naming James Humble instead of Craig Humble and omitting a number of the previous claims to leave only the three current counts. Before the Court are the Humbles' Motions to Dismiss Counts II and III under Rule 12(b)(6).

## Discussion

### I. Standard of Review

For a plaintiff to survive a Rule 12(b)(6) motion to dismiss, "the factual allegations, assumed to be true, must do more than create a speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredeson*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted). Although detailed factual allegations are not required, the plaintiff must provide more than mere labels or legal conclusions, or the "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007). The question is whether Plaintiff has presented "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S. Ct. at 1974.

### II. Gross Negligence

It is axiomatic that any claim of negligence requires the plaintiff to establish four elements: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the breach

3

proximately caused plaintiff injury; and (4) the plaintiff suffered damage. *Cummins v. Robinson Twp.*, 283 Mich. App. 677, 692, 770 N.W.2d 421, 433 (2009). The question of whether a legal duty exists is for the court to decide. *Id.* If no duty exists, there can be no liability for negligence. *Id.* In addition to the elements of negligence itself, a claim for gross negligence requires conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. *See Xu v. Gay*, 257 Mich. App. 263, 269, 668 N.W.2d 166, 170 (2003) (citation omitted).

Plaintiff has presented no case law, nor has legal research revealed any, indicating that when a private citizen calls the authorities to report excessive noise emanating from a neighboring property, a duty of care is owed to that neighbor. There is, however, case law holding that business-owners owe no duty when deciding whether to call the police about a potential problem with an invitee. *See, e.g., Housman v. Meijer, Inc.*, Nos. 93-1794, 93-2141, 1994 WL 468032, at *3 (6th Cir. Aug. 29, 1994) (unpublished table decision) ("[A] proprietor who acts in good faith owes no duty to its customers in deciding to call the police."); *Nrecaj v. Yono*, 173 Mich. App. 686, 687-88, 434 N.W.2d 210, 210-11 (1988) (holding that gift shop owners owed no duty when deciding to call the police about a customer who they believed had a gun and intended to rob them); *Hall v. Pizza Hut of Am., Inc.*, 153 Mich. App. 609, 612, 620, 396 N.W.2d 809, 810, 814 (1986) (finding that no duty was owed when employees called the police believing that the plaintiffs, who had come in to the restaurant to order food, were the same people who had robbed the restaurant five days earlier). Plaintiff attempts to distinguish both *Nrecaj* and *Hall* in that they involved situations of immediate danger. However, *Hall* involved reporting the whereabouts of robbery suspects, not a current robbery. Nor was immediate danger involved in *Housman*, but rather disorderly conduct by an elderly female customer with Parkinson's disease. 1994 WL 468032, at *1. Moreover, the general principal behind the cases is clear: "A citizen has a right and privilege to aid in the execution of laws

4

by giving information to the proper authorities." *Nrecaj*, 173 Mich. App. at 688, 434 N.W.2d at 211.

Plaintiff contends that a duty arose because the Humbles chose to contact the authorities in lieu of bringing a nuisance lawsuit. (Pl.'s Br. in Resp. to Def.'s Mot. to Dismiss at 4.) Plaintiff equates the Humbles' decision to file noise complaints rather than filing suit to a landlord choosing self-help over the judicial process, which public policy already condemns. *See Grant v. Detroit Ass'n of Women's Clubs*, 443 Mich. 596, 607-08, 505 N.W.2d 254, 259 (1993). Plaintiff urges the Court to extend this policy to cover neighborhood disputes as well. This policy against self-help has nothing to do with the instant case. The policy against landlords choosing self-help over the judicial process is meant to avoid the violent confrontations that can result when a landlord seeks to evict a tenant who believes he is in rightful possession. *Id*. at 608. There is no such risk here. Indeed, the Humbles' decision to file noise complaints allowed them to avoid confrontation altogether. The police can be presumed to act knowingly and legally, and the Humbles can petition their local representatives pursuant to established rules. The Humbles were under no duty to sue. Not only would such suits burden the judicial system, but such a duty would nullify the purpose of the City's noise ordinance altogether by requiring repeated, long, and expensive efforts to bring peace and quiet into a neighborhood. Thus, the Court finds that Plaintiff has failed to adequately allege the existence of a legal duty. Because Plaintiff has failed to meet his obligation of providing the "grounds for his entitlement to relief," his claim for gross negligence should be dismissed. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.

Moreover, Plaintiff's gross negligence claim is premised on the notion that the Humbles filed noise complaints with the intent to harm Plaintiff's business. The Amended Complaint states:

> Defendants, James and Virginia Humble, did owe Plaintiff a duty to exercise ordinary care.

5

> Defendants breached their duty by their willful filing of numerous meritless noise complaints against Plaintiff's business, and *such conduct was intended to harm Plaintiff's business.* (Am. Compl. ¶¶ 54-55) (emphasis added).

However, Michigan law makes clear that intentional acts, even when couched in terms of breach of a duty, cannot be the basis of a claim for negligence. *See, e.g.*, *Mahl v. Maguire*, No. 287130, 2009 WL 3199153, at *3 (Mich. Ct. App. Oct. 6, 2009) ("[T]he trial court should have dismissed plaintiff's gross negligence count regardless of the existence of any factual dispute because it was duplicative of, and subsumed by, his count for assault and battery."); *VanVorous v. Burmeister*, 262 Mich. App. 467, 483, 687 N.W.2d 132, 143 (2004) ("[T]his Court has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence."); *Smith v. Stolberg*, 231 Mich. App. 256, 258-59, 586 N.W.2d 103, 104-05 (1998) ("While plaintiff couches his claim in terms of a breach of defendant's duty "not to engage in disruptive behavior, not to speak to opposing parties in a case in which defendant is engaged as counsel, and not to touch or strike members of the opposite parties' family," plaintiff is essentially alleging an intentional, offensive touching. Therefore, plaintiff's proper cause of action is for the intentional tort of battery, and not negligence."). In this case, both of Plaintiff's claims, gross negligence and tortious interference with a business, are premised on the same facts. Plaintiff's gross negligence claim should be dismissed as it alleges intentional conduct that is merely "duplicative of, and subsumed by," his claim for tortious interference with a business. *Mahl*, 2009 WL 3199153, at *3.

### III. Tortious Interference with a Business Relationship

The elements of tortious interference with a business relationship are as follows: (1) the existence of either a valid business relationship or the expectancy of such relationship; (2) knowledge of the relationship or expectancy on the part of the defendant; (3) intentional interference by the defendant that causes the breach or termination of the relationship or expectancy; and (4)

resultant damages to the plaintiff. *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83, 90, 706 N.W.2d 843, 849 (2005); *Mino v. Clio Sch. Dist.*, 255 Mich. App. 60, 78, 661 N.W.2d 586, 597 (2003). The "intentional interference" must actually be improper, meaning it was either (1) the intentional doing of *per se* wrongful act or (2) the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiff's business relationship. *Advocacy Org. for Patients & Providers v. Auto Club Ins. Corp.*, 257 Mich. App. 365, 383, 670 N.W.2d 569, 580 (2003); *Feldman v. Green*, 138 Mich. App. 360, 369, 360 N.W.2d 881, 886 (1984). To show that an act is wrongful *per se*, it must be shown that it is "inherently wrongful or one that is never justified under any circumstances." *Formall, Inc. v. Cmty. Nat'l Bank of Pontiac*, 166 Mich. App. 772, 780, 421 N.W.2d 289, 293 (1988). To show that a lawful act was done "with malice and unjustified in law," the plaintiff must show specific, affirmative acts that corroborate the defendant's improper motive to interfere with the plaintiff's business relationship. *Feldman*, 138 Mich. App. at 369-70, 360 N.W.2d at 887.

As Plaintiff cannot show that calling the police to report the violation of a noise ordinance is inherently wrongful or never justified, Plaintiff must allege that the Humbles' conduct, though lawful, was done "with malice and unjustified in law." *Formall, Inc.*, 166 Mich. App. at 780, 421 N.W.2d at 293. Plaintiff has not alleged a single affirmative act to corroborate that the Humbles' motive in making the noise complaints was not the noise itself but rather intent to interfere with Plaintiff's business relationships. Instead, Plaintiff makes only conclusory statements to that effect. For example, the Complaint alleges, "[a]lthough calling the police is a lawful activity, the Humbles make [sic] complaints not out of legitimate concern, but in effort to either drive Plaintiff out of business or become so disruptive that Plaintiff would buy their property so the problem would go away." (Pl.'s Br. at 10.) If the Humbles' motive was to drive Plaintiff out of business, one would

7

expect to see more than fourteen calls over the three years that this dispute existed. Instead, the frequency of the calls suggests that the Humbles were driven my legitimate concerns about noise, a basis for which there can be no tortious interference. *See Wood v. Herndon & Herndon Investigations, Inc.*, 186 Mich. App. 495, 500, 465 N.W.2d 5, 8 (1990) ("[A] defendant is not liable for tortious interference of contract where he is motivated by legitimate personal or business interests.").

Plaintiff has failed to allege "specific, affirmative acts" to corroborate that the Humbles had an improper motive. *Feldman*, 138 Mich. at 369-70, 360 N.W.2d at 887. As such, Plaintiff has not shown that he is entitled to relief on the theory of tortious interference with a business and his claim should be dismissed. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.

## Conclusion

For the foregoing reasons, the Court will grant the Humbles' Rule 12(b)(6) motions. An order consistent with this Opinion will be entered.

Dated: November 30, 2009                   /s/ Gordon J. Quist
                                                                              GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE