UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TERRY RANSHAW,  CLUB
HOT SHOTS, II, LLC/CACTUS
JUICE SALOON,

       Plaintiffs,

v.                                                                                Case No. 1:09-CV-500

CITY OF LANSING, JAMES HUMBLE,                    HON. GORDON J. QUIST
VIRGINIA HUMBLE,

       Defendants.
_____/

## OPINION

Plaintiffs, Terry Ranshaw ("Ranshaw") and Club Hot Shots II, L.L.C. ("CHS II"), filed a Complaint against Defendants, the City of Lansing (the "City") and James and Virginia Humble (the "Humbles"), in the Ingham County Circuit Court.  Defendants removed the case to this Court, alleging federal question jurisdiction over Plaintiffs' federal constitutional claims as the basis for removal.  Following the removal, Virginia Humble filed a motion to dismiss, and Plaintiffs responded by filing a three-count Amended Complaint.  Thereafter, Virginia Humble and James Humble, through separate counsel, filed motions to dismiss Counts II and III of the Amended Complaint, which were asserted only against the Humbles.  On November 30, 2009, the Court issued an Opinion and separate Order granting the Humbles' motions and dismissing Counts II and III and the Humbles from the case.  Thus, the City is the only remaining Defendant, and Count I, which alleges a claim under 42 U.S.C. § 1983, is the only remaining claim.

The City has now moved for summary judgment on Count I.  For the reasons set forth below, the Court will grant the motion and dismiss Plaintiffs' Amended Complaint with prejudice.

## I. BACKGROUND

This case arises out of a dispute spanning several years between two neighbors, the Humbles and CHS II, over noise from a bar that CHS II operated next to the Humbles' residence. Plaintiffs' § 1983 claim concerns the City's response to the Humbles' repeated complaints about noise from the bar.

In 2000, Ranshaw, on behalf of business entities to be formed, entered into an agreement for the purchase of the personal property, real estate, and liquor licenses used in connection with a bar and restaurant business located at 3323 North East Street, Lansing, Michigan (the "Property"). Ranshaw later assigned the purchase agreement to CHS II, a limited liability company, of which he was the sole member. Ranshaw also formed a separate company, Diversified Marketing, Inc. ("Diversified"). Diversified entered into a land contract for the purchase of the real property and subsequently leased it to CHS II. CHS II operated a bar on the Property from 2000 to 2007 under various names, including Cactus Juice Saloon, Remedy Night Club, and, finally, The Stampede.

During the period of time relevant to the instant case, the City had in effect a noise ordinance, which provides, in relevant part:

> No person shall make, or continue, cause or permit to be made, verbally or mechanically, any unnecessary noise disturbance. Noncommercial public speaking and public assembly activities conducted on any public space or public right of way shall be exempt from this section, except as otherwise provided here.

> The following acts, and the causing thereof, are hereby declared to be violations of this section:

> (a) *Sound Production and Reproduction Systems*. The playing, using or operating, or permitting the playing, using or operating, of any television or radio receiving set, musical instrument, phonograph or other machine or device for producing, reproducing or amplifying sound in such a manner as to create a noise disturbance, or at any time with a louder volume than is necessary for convenient hearing for the persons who are in the room, chamber, vehicle or other place in which such an instrument, machine, set or device is operated and who are voluntary listeners thereto. The operation of

any such television or radio receiving set, instrument, phonograph, machine or device between 11:00 p.m. and 7:00 a.m. of the following day in such a manner as to be plainly audible at a distance of fifty feet from the building, structure, vehicle or other place in which it is located shall be prima-facie evidence of a violation of this section. This subsection shall not apply to noncommercial speech.

(City of Lansing Noise Ordinance § 654.07.) The City also had in effect a cabaret ordinance pertaining to licensing and other issues. Section 808.09 of the cabaret ordinance, which pertains to responsibilities of licensees, specifies that "[a]fter the hour of 11:00 p.m., music shall be controlled so that the sound therefrom will not be audible beyond 100 feet of the building in which a cabaret is located." (City of Lansing Cabaret Ordinance § 808.09(d).)

Between 2000 and 2004, CHS II operated the bar without receiving any complaints or violations of the City's noise ordinances. (Am. Compl. ¶ 2.) In 2003, CHS II submitted a request to add space to the bar, which included construction of a pole barn for providing various forms of entertainment. In addition, CHS II requested an Official Permit (Food), Outdoor Service, and Dance Entertainment Permit. The City's police department recommended that the permit application be approved, subject to final inspection. On November 12, 2003, the Michigan Liquor Control Commission ("LCC") approved the application, and final inspection occurred on May 25, 2004.

In February of 2004, the Humbles purchased the residence located immediately to the west of the bar. Later that year, CHS II, after obtaining the necessary approvals from the City's Planning Department, completed the pole barn and related improvements. The west wall of the newly-completed structure was located approximately 10 feet from the Humbles' residence. Soon after CHS II completed the pole barn, it began to hold live bull riding events in the pole barn on weekend nights.

In September of 2004, the Humbles, through their attorney, began contacting the City about its approval of Plaintiffs' site plan, which the Humbles maintained was improper, and the noise

3

created by the loading and unloading of bulls just feet away from their house between 1:00 a.m. and 3:00 a.m. (Letter of 9/21/04 from Mertz to Stachwyck, Dkt. No. 28.) The Humbles' complaints about the noise continued into 2005, with the Humbles' counsel asserting that the City was favoring Ranshaw and CHS II in its enforcement of the laws. (Letter of 7/8/05 from Mertz to Stachowiak, Dkt. No. 28[1]; letter of 7/8/05 from Mertz to Hall, Dkt. No. 29.) Beginning in 2005, the City's police officers began visiting the bar in response to noise complaints by the Humbles. During 2006 and 2007, Lansing Police Officers made at least 18 visits to the bar as a result of noise complaints by the Humbles. (Am. Compl. ¶¶ 13, 15, 16,18, 21, 23, 24-26, 28-29, 32, 34, 36, 37.) However, Plaintiffs received only one citation for violating the local noise ordinance, to which they pled guilty and paid a fine. (*Id.* ¶¶ 16, 19.) On several of these occasions, patrons left the bar in response to the police presence. (*Id.* ¶¶ 23-24, 26, 28.)

On April 13, 2006, the City Attorney sent Plaintiffs a letter notifying them that the City had received noise complaints and reminding them of the prohibitions of Lansing Codified Ordinance Sections 654.07 and requesting that Plaintiffs "keep the music volume at a level which will not disturb the public peace and quiet." (Letter of 4/13/06 from Lane to Plaintiffs, Pls.' Resp. to Def.'s Mot. Ex. G.) The City Attorney sent Plaintiffs a follow-up letter on April 27, 2006, reiterating the request that Plaintiffs keep the noise to a reasonable level and notifying Plaintiffs that continuing violations of the noise ordinance might result in revocation of CHS II's cabaret license. (Letter of 4/27/06 from Lane to Plaintiffs, Pls.' Resp. to Def.'s Mot. Ex. G.) Also during 2006, CHS II was charged with several violations of LCC administrative rules, including allowing fights or brawls on the premises, installing an additional bar without written approval of the LCC, allowing persons

---

[1] The September 21, 2004, and July 8, 2005, letters from the Humbles' counsel appear to be to the same person in the City's Building and Safety Department, Susan Stachowiak. The Court understands the correct spelling to be Stachowiak.

not on the license to derive use of the license, and selling or transferring possession of a portion of the premises without approval of the LCC. Ranshaw waived the right to contest these charges and paid a fine of $1,500.00.

In May of 2007, the City Attorney sent a letter to Ranshaw requesting a meeting to discuss a settlement of the dispute between Plaintiffs, the Humbles, and the City. (*Id.* ¶ 38.) Around the same time, Plaintiffs received a foreclosure notice on the bar. In September 2007, Plaintiffs closed the bar due to the foreclosure. Subsequently, the City Attorney sent Plaintiffs a letter stating that "because Plaintiff's bar was now in foreclosure its previous settlement offers were null and void." (*Id*. ¶ 43.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## III. DISCUSSION

Plaintiffs' remaining claim, set forth in Count I, is that in response to the Humbles' threats to sue, the City adopted a policy of harassment against Plaintiffs' bar. Plaintiffs further allege that

the execution of the policy resulted in the violation of their Fourteenth Amendment rights because they were deprived of protected property interests – their interests in the goodwill of the business, the liquor license, the cabaret license, and real and personal property – without due process of law. (Am. Compl. ¶ 50.) The City argues that it is entitled to summary judgment on two grounds. First, it argues that Plaintiffs cannot show that the City had an unconstitutional custom, policy, practice, or procedure that was the moving force behind the alleged deprivation of Plaintiffs' constitutionally-protected rights. Second, it contends that Plaintiffs cannot show a violation of their Fourteenth Amendment right to due process because the actions of the City's police officers did not deprive Plaintiffs of any protected property interests.[2]

## A.    Plaintiffs' Rule 56(f) Affidavit does not Preclude Summary Judgment

In response to the City's motion, Plaintiffs filed a Rule 56(f) affidavit in support of their assertion that the motion is premature and to explain why they need additional discovery to defend the motion. The City filed its motion approximately three months prior to the deadline for completion of discovery. The discovery deadline has now passed and Plaintiffs have had ample time to obtain whatever evidence they needed to respond to the City's motion. Yet, Plaintiffs have not supplemented their response with additional evidence obtained during discovery. Thus, the Rule 56(f) affidavit is irrelevant.

Even if discovery remained open, the Rule 56(f) affidavit would still not preclude summary judgment. Plaintiffs' Rule 56(f) affidavit focuses solely upon the existence of a policy, practice, or custom of the City. However, a municipality may be held liable under § 1983 only  if the plaintiff "demonstrate[s] a constitutional violation at the hands of an agent or employee of the municipality."

---

[2]The City separately argues that Ranshaw's claim must be dismissed because Ranshaw, as the CEO and sole member of CHS II, lacks standing to sue for injuries to the limited liability company, CHS II. Because the Court concludes that Plaintiffs have failed to show a violation of their constitutional rights, the Court need not address this issue.

*Fox v. DeSoto*, 489 F.3d 227, 238 (6th Cir. 2007); *see also Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." (citing *City of L.A. v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573 (1986)). As explained below, the Court's analysis focuses solely on whether Plaintiffs have demonstrated a constitutional violation, which Plaintiffs' Rule 56(f) affidavit does not address.

**B.      Plaintiffs Have Failed to Show a Deprivation of a Protected Property or Liberty Interest**

Plaintiffs allege that they were deprived of protected property interests without due process of law in violation of the Fourteenth Amendment, namely, the goodwill of their business, the liquor license, the cabaret license, and their real and personal property.

A plaintiff asserting a procedural due process claim under § 1983 must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S. Ct. 975, 983 (1990). In determining whether a plaintiff possesses a protected property interest, courts often look to state law. *Howard ex rel. Estate of Howard v. Bayes*, 457 F.3d 568, 572 (6th Cir. 2006). "Property interests do not derive from the Constitution, but rather are created and defined by 'existing rules or understandings that stem from independent sources such as state law . . . .'" *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972)).

**1.      Property Interest**

CHS II had a property interest in its liquor licences, *see R.S.W.W., Inc. v. City of Kego Harbor*, 397 F.3d 427, 435 (6th Cir. 2005) (noting that in *Wojcik v. City of Romulus*, 257 F.3d 600 (6th Cir. 2001), the Sixth Circuit recognized that Michigan courts have held that a holder of a liquor

7

license has a constitutionally protected interest in the license), and, for purposes of the instant motion, the Court assumes that CHS II had a property interest in its cabaret license as well. In addition, although CHS II leased the real property from Diversified, it had a property interest in the lease. *See Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 135, 122 S. Ct. 1230, 1236 (2002) (recognizing that leasehold interests are property interests protected by the due process clause of the Fourteenth Amendment). Finally, CHS II had a property interest in its personal property and the goodwill of its business.[3] *See Sambo's Rests., Inc. v. City of Ann Arbor*, 663 F.2d 686, 687 (6th Cir. 1981).

Even though CHS II possessed constitutionally protected property interests, Plaintiffs have failed to allege or show that the City's employees or agents deprived them of those interests. Plaintiffs neither allege, nor offer evidence showing, that the City's employees or agents physically deprived CHS II of its real or personal property, took any official action to revoke or suspend its licenses, or otherwise sought to hinder CHS II's use of its property. As Plaintiffs concede, Diversified's lender initiated the foreclosure proceedings that resulted in CHS II's loss of its leasehold interest and business personal property and the ultimate closure of the bar business. Moreover, due to the foreclosure, Ranshaw, on behalf of CHS II, requested that the liquor licenses be placed in escrow. Finally, CHS II simply failed to renew the cabaret license.

Plaintiffs argue that although the City did not directly deprive CHS II of its property interests, it did so indirectly by adopting a "zero tolerance policy" designed to harass and disrupt

---

[3] In *Med Corp., Inc. v. City of Lima*, 296 F.3d 404 (6th Cir. 2002), the Sixth Circuit concluded that the plaintiff's claim that its proposed one-week suspension from receiving 911 calls would deprive it of its property interest in its business goodwill was indistinguishable from its liberty interest claim based upon injuries to its reputation. *Id.* at 415. The court concluded that the claimed reduction in the value of the plaintiff's goodwill concerned a liberty interest because it was based upon an injury to business reputation. *Id.* at 416. In the instant case, Plaintiffs do not expressly assert an injury to CHS II's business reputation. Rather, as the Court understands it, Plaintiffs are asserting a deprivation of the going concern value of CHS II's business. The Court thus concludes that CHS II's interest in its goodwill is properly characterized as a property interest. If, however, the asserted interest is characterized as a liberty interest, Plaintiffs could not show a deprivation because they do not allege the "loss of a governmental right, benefit, or entitlement" necessary to establish a deprivation of a liberty interest. *Id.* at 414.

CHS II's business in order to appease the Humbles and avoid liability to them as a result of the City's improper approval of Plaintiffs' pole barn construction in 2004. Plaintiffs contend that the policy of harassment was intended to affect, and ultimately led to, the closure of the bar due to declining sales as a result of the constant harassment and enforcement. Plaintiffs contend that the Seventh Circuit's decision in *Reed v. Village of Shorewood*, 704 F.2d 943 (7th Cir. 1983), supports their theory. In *Reed*, the plaintiffs alleged that the defendants sought to destroy their business and force them to close because the defendants detested the live rock and roll entertainment the plaintiffs provided in their bar. The plaintiffs alleged that the defendants harassed them by "arresting customers and employees on baseless charges, demanding proof of age from customers who obviously were many years over the legal drinking age, and bringing groundless proceedings to take away their Class A license." *Id.* at 947. Several times the defendant village and its officials took action directly against the plaintiffs' liquor license by suspending it, hastily passing an ordinance reducing the number of licenses and informing the plaintiffs that their license would not be renewed, and finally by revoking it based upon trumped up charges, each time being reversed by the Illinois Liquor Control Commission. *Id.* The plaintiffs tried to sell their business, but due to the defendants' harassment were unable to do so and eventually had to close their business and surrender their liquor license. The court held that although the defendants were unsuccessful in their attempts to revoke or take away the plaintiffs' liquor license by nonrenewal, their harassment of the plaintiffs' employees and customers was a deprivation because it destroyed the value of the business and forced the plaintiffs to surrender their license.

*Reed* is materially distinguishable from the instant case. In contrast to *Reed*, in this case there is no allegation or evidence that the City's police officers harassed or wrote baseless charges against Plaintiffs' customers or employees or brought groundless proceedings to revoke CHS II's licenses. While Plaintiffs were charged with one violation of the City's noise ordinance and with

violations of various LCC administrative rules in 2006 (some as a result of LCC investigations), Plaintiffs did not contest those charges at the time they were brought and do not now claim that they were baseless. Similarly, there is no evidence that the City or any of its officers or employees took *any* action specifically directed at CHS II's liquor or cabaret licenses for the purpose of revoking them. As Plaintiffs admit, when police officers went to the bar, they most often did so in response to noise complaints by the Humbles and usually found no violation. This was legitimate law enforcement activity in response to citizen complaints, which does not give rise to a claim. Even if such activity negatively affected the value of CHS II's property, a deprivation that is an "indirect and incidental result of the Government's enforcement action[] does not amount to a deprivation of any interest in life, liberty, or property." *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 787, 100 S. Ct. 2467, 2476 (1980).

Plaintiffs' evidence regarding a "zero tolerance policy" and a suggestion by an Assistant City Attorney of possibly having CHS II's cabaret license revoked for noise violations likewise fails to establish a deprivation. Read in proper context, the "zero tolerance policy" refers to noise violations rather than opposition to Plaintiffs' bar business. (E-mail of 4/21/06 from Nettles to Lane Pls.' Resp. to Def.'s Mot. Ex. B.) And as already mentioned, in spite of numerous complaints by the Humbles, in almost every instance the police officers found no noise violation. In fact, the e-mails Plaintiffs submitted show that some responding officers were skeptical of the Humbles' noise complaints. Furthermore, there is no evidence that any action was taken in furtherance of the suggestion of revoking CHS II's cabaret license.

### 2. Liberty Interest

In addition to alleging that they were deprived of a property interest, in their response (although not alleged in their Amended Complaint), Plaintiffs contend that the City's employees deprived Plaintiffs of their liberty interest in their right to operate a business free from arbitrary

governmental interference.  In *Parate v. Isibor*, 868 F.2d 821 (6th Cir. 1989), the Sixth Circuit

stated: "This Court has long held that the 'freedom to choose and pursue a career, "to engage in any

of the common occupations of life," *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S. Ct. 625, 626, 67

L. Ed. 1042 (1923), qualifies as a liberty interest which may not be arbitrarily denied by the State.'"

*Id.* at 831 (quoting *Wilkerson v. Johnson*, 699 F.2d 325, 328 (6th Cir. 1985)).  *See also Bower v. Vill.*

*of Mount Sterling*, No. 00-3418, 2002 WL 1752270, at \*3 (6th Cir. July 26, 2002) ("Under [*Bd. of*

*Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S. Ct. 2701 (1972)], the Due Process Clause

encompasses the liberty to pursue one's trade, profession or calling, but does not grant the right to

a specific job.").

In *Sanderson v. Village of Greenhills*, 726 F.2d 284 (6th Cir. 1984) (per curiam), the plaintiff

sought to open a pool hall within the defendant village.  The plaintiff contacted the village

administrator to inquire whether he needed a license under the village's "amusement devices"

ordinance and was informed that he did not need a license because the ordinance only applied to

coin operated devices.  However, one unidentified village council member stated that the plaintiff

would need, but could not obtain, approval from the council.  Proceeding upon the administrator's

advice, the plaintiff opened his business without obtaining a license.  Three hours after opening, the

police chief ordered the pool hall closed because it was not licensed.  The police chief gave the

plaintiff an application for a license but told him that he would not receive a license.  The plaintiff

closed his business and filed suit.  The Sixth Circuit held that the plaintiff failed to establish that he

was deprived of a property interest in a license because his business was not covered by the

ordinance and the plaintiff was not entitled to a license.  *Id.* at 286.  However, the court held that the

plaintiff presented sufficient evidence to show a deprivation of a liberty interest "to engage in

whatever legal business he elects to pursue without arbitrary interference."  *Id.* at 286.  The court

observed that the plaintiff's evidence that village officials interfered with his business "simply

[because they] did not desire a billiard parlor in the village" demonstrated arbitrary and unconstitutional conduct. *Id.*

Similarly, in *San Jacinto Savings & Loan v. Kacal*, 928 F.2d 697 (5th Cir. 1991), the Fifth Circuit held that the owner of a soda fountain and arcade's evidence that police officers harassed her patrons was sufficient to establish deprivations of her property interest in the profits of her business and her liberty interest in operating her business. The plaintiff's evidence showed that police officers repeatedly harassed teenage patrons at her place of business, threatened to arrested patrons if they did not leave, prevented patrons from entering the parking lot, and stopped at least one vehicle which was on the way to the arcade and told the occupants to turn their car around. The court held this evidence sufficient to show "that the officers, acting under color of state law, sought to remove or significantly alter [the plaintiff's] liberty and property interests in [her business] without due process of law." *Id.* at 704.

In contrast to *Sanderson* and *Kacal*, Plaintiffs have presented no evidence of arbitrary government interference by the City's employees with Plaintiffs' liberty interest to engage in their bar business. As discussed above, Plaintiffs have neither alleged nor offered evidence to show that the City's employees harassed their customers or employees or took any other actions designed to prevent Plaintiffs from operating the bar business. *See Callaghan v. Congemi*, Civ. A. Nos. 91-1496, 91-2897, 1992 WL 124809, at *2 (E.D. La. June 1, 1992) (denying the defendants' motion for summary judgment because the plaintiffs' evidence showed that police officers frequently visited the plaintiffs' bar to check customers' identification and chased away customers congregating outside the bar); *Goutos v. Vill. of Summit*, No. 93 C 601, 1995 WL 794569, at *1 (N.D. Ill. Dec. 8, 1995) (allegations of harassment included issuing parking tickets to patrons while parked on private property, randomly stopping Hispanic patrons without probable cause, stopping certain planned lawful events, and closing the plaintiffs' bar without probable cause and without a hearing).

In this case, the alleged harassment concerned nothing more than police officers responding to citizen noise complaints and concluding, in most instances, that no violation occurred. In short, the City found itself in the middle of a difficult situation between Plaintiffs and the Humbles and merely sought to resolve the dispute in an even-handed manner. Plaintiffs have thus failed to show a constitutional deprivation.

Finally, Plaintiffs argue that Ordinance 654.07, which restricts noise between 11:00 p.m. and 7:00 a.m. that is "plainly audible at a distance of fifty feet" is unconstitutionally vague. More specifically, Plaintiff argues that the vagueness arises because the cabaret license noise restriction states that noise may "not be audible beyond 100 feet from the building," while the general noise ordinance, which the City attorney cited in his letters to Plaintiffs, is limited to 50 feet. In other words, Plaintiffs contend that because of the discrepancy between the two ordinances, they could not conform the conduct of their business to the law. Plaintiffs argue that because the ordinances do not provide fair notice of what conduct is prohibited, "the City's reliance on those provisions for their zero tolerance policy against Plaintiff's business denied him of [sic] due process." (Pls.' Resp. to Def.'s Mot. at 13.)

The Court rejects Plaintiffs' void for vagueness argument because they failed to allege such a claim in their Amended Complaint. Moreover, as explained above, the City's actions did not constitute a deprivation giving rise to a due process claim. Accordingly, this argument is rejected.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the City's motion for summary judgment.

An order consistent with this Opinion will be entered.


Dated: August 12, 2010                          /s/ Gordon J. Quist
                                                GORDON J. QUIST
                                        UNITED STATES DISTRICT JUDGE